CHARLES E. CANTER (Cal. Bar No. 263197)
Email: canterc@sec.gov
SARAH S. NILSON (Cal. Bar No. 254574)
Email: nilsons@sec.gov
YOLANDA OCHOA (Cal. Bar No. 267993)
Email: ochoay@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Katharine Zoladz, Co-Regional Director
Gary Y. Leung, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>ADAM E. LEVIN,<br><br>Defendant. | Case No. 2:23-cv-08081<br><br>**COMPLAINT** |

Plaintiff Securities and Exchange Commission ("SEC" or "Commission") files this complaint against Defendant Adam E. Levin ("Levin") and alleges:

## JURISDICTION

1. The Court has jurisdiction over this action under Sections 20(b), 20(d)(1), and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1) & 77v(a), and Sections 21(d)(1), 21(d)(3)(A), 21(e), and 27(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e) & 78aa(a).

2. Defendant has, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices, and courses of business alleged in this complaint.

3. Venue is proper in this district under Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a) and Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a), because certain of the transactions, acts, practices, and courses of conduct constituting violations of the federal securities laws occurred within this district and because Levin resides in this district.

## SUMMARY

4. This securities fraud enforcement action involves a scheme to conceal paid promotion of a securities offering from at least April 2020 through August 2021.

5. Specifically, Levin, on behalf of his company, Hightimes Holding Corporation ("Hightimes"), entered into a sham agreement with a Canadian entity ("Entity 1") to pay shares of stock and a percentage of investor funds raised in exchange for promotional articles authored by William Mikula ("Mikula") in which Mikula would tout Hightimes' securities offering under Regulation A ("Reg A"). These articles, as Levin knew, falsely stated that they were based on independent research and represented to would-be investors that neither the newsletter publishing the articles nor the authors received any compensation for their recommendation. In

fact, Levin paid Mikula—through Entity 1 to conceal Mikula's receipt of funds—at least $150,000 in cash and provided about $100,000 in lavish entertainment and travel for Mikula and his associates.

6. In addition, Levin violated the registration provisions of the federal securities laws. He continued the Hightimes securities offering after Hightimes was no longer eligible for the Reg A exemption and no other registration exemption applied. He also falsely represented to investors that they were purchasing Hightimes common stock for a price of $1 per share, when in fact they were purchasing for $11 per share.

7. Through his conduct, Levin violated the antifraud provisions of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5, and the antifraud provisions of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a). Levin also violated the registration provisions of Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) & 77e(c).

8. The SEC seeks permanent injunctions against future violations of Exchange Act Section 10(b) and Rule 10b-5 thereunder and Securities Act Sections 5(a) and 5(c) and 17(a), a civil penalty against Levin, and an order barring Levin from serving as an officer or director of a public company.

## THE DEFENDANT

9. **Adam Levin**, age 44, is a resident of Venice, California. Levin founded Hightimes in 2017 and has served as the Executive Chairman of the Board since that time. Levin was also chief executive officer ("CEO") of Hightimes from 2017 to 2019.

## RELATED ENTITIES AND INDIVIDUALS

10. **Hightimes Holding Corporation** ("Hightimes") is a Delaware corporation with its principal place of business in Los Angeles, California. Hightimes was founded by Levin in 2017 for the purpose of acquiring the High Times brand, a Cannabis related publication and platform. Hightimes received

qualifications from the Commission to conduct a Reg A offering in March 2018. Palm Beach Venture promoted Hightimes between at least April 2020 and at least August 2021.

11. **Jonathan William Mikula, a/k/a/ William Mikula,** is a resident of Georgia, who, from at least 2019 through late 2021, was chief analyst and author of Palm Beach Venture, a newsletter published by Palm Beach Research Group. Mikula has been twice enjoined by federal courts, including this Court, from violating the federal securities laws: *SEC v. Phoenixsurf.com, et al.*, Case No. 2:07-cv-04765-JSL, ECF No. 6 (C.D. Cal. Aug. 14, 2007); *SEC v. Mikula*, Case No. 1:08-cv-03097-BBM, ECF No. 95 (N.D. Ga. Sept. 24, 2009). In connection with false statements he made to the SEC in the 2007 case, Mikula pled guilty to providing false information to a federal agency, in violation of 18 U.S.C. § 1001. *United States v. Mikula*, Case No. 2:10-cr-00649-DSF, ECF No. 18 (C.D. Cal. Jan. 19, 2011). The SEC filed an action in this Court in 2022 against Mikula and others arising out of the some of the same conduct at issue in this action. *SEC v. Mikula*, 2:22-cv-07096-SB-E.

12. **Christian Fernandez a/k/a Christian Crockwell** is a Mexican citizen residing in Georgia. Fernandez funneled a portion of the payments to Mikula in exchange for Mikula's Hightimes promotion. Fernandez is a defendant in the SEC's action against Mikula.

13. **Amit Raj Beri a/k/a Raj Beri** is an Australian national residing in Florida. Beri is a defendant in the SEC's action against Mikula. Like Fernandez, Beri acted as a middleman between Hightimes and Mikula with respect to the promotion.

14. **Palm Beach Research Group** is operated by Common Sense Publishing, LLC, a subsidiary of Market Wise, Inc., a U.S. public company. Palm Beach Research Group publishes Palm Beach Venture, a subscription-based newsletter that focuses on opportunities for investors to invest in securities offered under Reg A. Mikula was one of two attributed authors of the Palm Beach Venture newsletter.

## THE ALLEGATIONS

### A. The Hightimes Offering

15. Hightimes engaged in a securities offering between March 2018 and December 2022.

16. Hightimes was initially qualified to conduct a Reg A offering in March 2018.

17. The offering permitted Hightimes to offer shares of common stock at a price of $11 per share.

18. By at least June 2020, Hightimes was delinquent in filing updated audited financial statements with the Commission as required to continue relying on the Reg A exemption.

19. Because Hightimes failed to file the updated audited financial statements as required, Reg A was not available to any sales made in the offering after June 2020.

20. From June 2020 through December 2022, Hightimes continued to offer and sell approximately $13 million in Hightimes securities.

21. Neither Reg A nor any other exemption from registration was available for the transactions that occurred between June 2020 and December 2022.

22. Levin was a necessary participant and substantial factor in Hightimes' securities offering, including that portion of the offering conducted after June 2020.

### B. The Hightimes Promotion

23. In early 2020, Levin and Mikula discussed the possible promotion of Hightimes through Palm Beach Venture.

24. Mikula introduced Levin to Beri who, acting at Mikula's behest, began advising Levin on how to secure Mikula's promotion.

25. Beri directed Levin to enter into a consulting agreement with Entity 1, a Canadian entity controlled by Individual 1.

26. The agreement ostensibly provided that Entity 1 would perform

"marketing services" for Hightimes.

27. An initial draft of the agreement set the compensation terms at 5% of the monies raised through the Palm Beach promotion, half in cash and half in stock, to a maximum of $3 million.

28. While the final agreement did not include a reference to Palm Beach, the parties understood that the contract required Hightimes to pay Entity 1 5% of investor funds raised from the commencement of the Palm Beach promotion to the close of the offering.

29. Levin negotiated the terms of the agreement with Beri on Hightimes' behalf.

30. The agreement with Entity 1 was a sham and a means of concealing payment to Mikula for the promotion.

31. Hightimes and Levin had no expectation that Entity 1 or Individual 1 would provide services under the contact, and in fact they did not provide any services.

32. On April 6, 2020, two days after Hightimes executed the contract with Entity 1, Palm Beach circulated an article to its subscribers touting Hightimes.

33. The article contained an "important note" falsely claiming that Palm Beach and its affiliates were not compensated for recommending Hightimes.

34. Mikula shared the article with Levin before it was circulated to prospective investors, and Levin failed to raise any issue about the disclaimer.

35. Beri advised Levin that it was necessary to lavishly entertain Mikula and his associates in exchange for the Palm Beach promotion.

36. In the interest of securing the Palm Beach promotion, and during the pendency of the promotion, Hightimes and Levin expended approximately $100,000 in investor funds to entertain Mikula and his associates, including Fernandez.

37. These lavish entertainment expenses included meals and bottle service at clubs, yacht rentals to host Mikula, the engagement of entertainers, and other such

expenses.

38. Much of this entertainment took place in Miami and Las Vegas, where Mikula enticed Levin to join him with promises of filming promotional videos for Hightimes.

39. On at least one occasion, Fernandez, Mikula's close associate and business partner, explicitly told Levin that the more entertainment Hightimes provided for Mikula, the more promotional efforts Mikula would provide.

40. A September 2020 Palm Beach promotional article on Hightimes contained the additional disclaimer that "Palm Beach Research Group writers and publications do not take compensation in any form for covering those securities or commodities." This statement was false considering the extensive and lavish entertainment that Levin bestowed on Mikula in exchange for the promotion.

41. During the pendency of the Palm Beach promotion, Levin regularly corresponded with the inflow of investors from the successful promotion and made no efforts to alert them that it was a paid-for-promotion.

42. Between April 2020 and June 2020, Hightimes raised $6 million through the Palm Beach promotion.

43. Following a meeting among Levin, Mikula, and Fernandez in late summer 2020 in Las Vegas, Hightimes paid Entity 1 $150,000, that is, 2.5% of the $6 million raised through the Hightimes promotion as contemplated in the sham agreement between Hightimes and Entity 1.

44. Entity 1 provided no meaningful consulting services to Hightimes to warrant these funds.

45. Entity 1 paid Mikula his portion of the $150,000 payment in two tranches:

(a) First, Entity 1 disbursed part of Mikula's share directly to an entity owned by Mikula in payments of $14,980, $5,976 and $6,054 in October 2020.

(b) Second, Entity 1 disbursed part of Mikula's share to Fernandez,

who in turn funneled the money to Mikula. In October 2020, Entity 1 disbursed about $21,790 to Fernandez, who in turn paid Mikula half that amount, about $10,985, in cash. In January 2021, Entity 1 disbursed about $19,980 to Fernandez, who again paid half of that amount, about $9,990, to Mikula in cash.

46. The payments were paid through the Canadian entity and other offshore accounts to conceal from investors that payments from Hightimes would go to Mikula.

47. Levin knew, or was reckless in not knowing, that Hightimes' payment to Entity 1 was to compensate Mikula for his promotional articles.

48. Levin's conduct regarding the sham agreement and the payment to Entity 1 was also unreasonable and therefore negligent.

**C. Material Misrepresentations to Investors**

49. Levin also made material misrepresentations and omissions about the price that investors were paying for Hightimes' common stock.

50. Hightimes initially received qualification to offer shares at $11 per share. At Mikula's urging, and to initially secure the promotion by Palm Beach, Hightimes and Levin falsely stated that Hightimes had changed its share price from $11 per share to $1 per share.

51. Palm Beach's promotional materials, as well as Hightimes investor website, falsely stated that investors were purchasing shares at $1.

52. In response to questions from investors, Levin falsely assured investors that they were purchasing at $1 per share.

53. In fact, Hightimes investors purchased, and continue to hold, at $11 per share.

54. Levin knew, or was reckless in not knowing, that his statements to investors about the share price were false.

55. In addition, Levin's conduct when assuring investors that they were purchasing Hightimes stock at $1 per share was unreasonable and therefore negligent.

## FIRST CLAIM FOR RELIEF

**Fraud in Connection with the Purchase or Sale of Securities**

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5**

56. The SEC realleges and incorporates by reference paragraphs 1 through 55 above.

57. Levin—with Mikula, Fernandez, and Beri—carried out a scheme to defraud through the combination of their deceptive statements and actions concerning the Hightimes offering. Throughout the promotional campaign, defendants concealed the compensation paid to Mikula, through Fernandez, Beri, and others, in exchange for Mikula's promotion of the Hightimes offering.

58. In addition, Levin misled and deceived investors by misrepresenting the share price of Hightimes' common stock.

59. By engaging in the conduct described above, Levin, directly or indirectly, in connection with the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce, or the mails, (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, including purchasers and sellers of securities.

60. Levin, with scienter, employed devices, schemes, or artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, including purchasers and sellers of securities by the conduct described in detail above.

61. By engaging in the conduct described above, Levin violated, and unless

restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

**SECOND CLAIM FOR RELIEF**

**Fraud in the Offer or Sale of Securities**

**Violations of Section 17(a) of the Securities Act**

62. The SEC realleges and incorporates by reference paragraphs 1 through 55 above.

63. In the offer or sale of the Hightimes securities, Levin—with Mikula, Fernandez, and Beri—carried out a scheme to defraud, through the combination of their deceptive statements and actions concerning the Hightimes offering. Throughout the promotional campaign, Levin concealed the compensation paid to Mikula, through Fernandez, Beri, and others, in exchange for Mikula's promotion of the Hightimes offering.

64. In addition, Levin misled and deceived investors by misrepresenting the share price of Hightimes' common stock.

65. By engaging in the conduct described above, Levin, directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails (a) employed devices, schemes, or artifices to defraud; (b) obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

66. Levin, with scienter, employed devices, schemes, or artifices to defraud; with scienter and/or negligence, obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were

made, not misleading; and with scienter and/or negligence, engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

67. By reason of the foregoing, Levin violated, and unless restrained and enjoined will continue to violate, Sections 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

**THIRD CLAIM FOR RELIEF**

**Unregistered Offer and Sale of Securities**

**Violations of Sections 5(a) and 5(c) of the Securities Act**

68. The SEC realleges and incorporates by reference paragraphs 1 through 55 above.

69. As set forth above, Hightimes was no longer eligible for the Reg A exemption at least as of June 2020 when it failed to file required financial statements. Between June 2020 and December 2022, Hightimes and Levin offered and sold approximately $13 million in Hightimes securities to investors in interstate commerce, without filing a registration statement with the SEC, and without qualifying for any exemption from registration.

70. By engaging in the conduct described above, Levin, directly or indirectly, singly and in concert with others, has made use of the means or instruments of transportation or communication in interstate commerce, or of the mails, to offer to sell or to sell securities, or carried or caused to be carried through the mails or in interstate commerce, by means or instruments of transportation, securities for the purpose of sale or for delivery after sale, when no registration statement had been filed or was in effect as to such securities, and when no exemption from registration was applicable.

71. By engaging in the conduct described above, Levin has violated, and unless restrained and enjoined, are reasonably likely to continue to violate, Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) & 77e(c).

## PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that the Court:

**I.**

Issue findings of fact and conclusions of law that Levin committed the alleged violations.

**II.**

Issue judgment, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Levin and his officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with him, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Section 10(b) of the Exchange Act, 15 U.S.C. §§ 78j(b) and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

**III.**

Issue judgments, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Levin and his officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with him, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Section 17(a) of the Securities Act, 15 U.S.C. §77q(a).

**IV.**

Issue judgment, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Levin and his officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with him, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) & 77e(c).

**V.**

Order Levin to pay civil penalties under Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

**VI.**

Enter an order against Levin, pursuant to Section 20(e) of the Securities Act, 15 U.S.C. § 77t(e), and Sections 21(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2), prohibiting him from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act, 15 U.S.C. § 78ℓ or that is required to file reports pursuant to Section 15(d) of the Exchange Act, 15 U.S.C. § 78o(d).

**VII.**

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

**VIII.**

Grant such other and further relief as this Court may determine to be just and necessary.

Dated: September 27, 2023

*/s/ Charles E. Canter*
Charles E. Canter
Sarah S. Nilson
Yolanda Ochoa
Attorneys for Plaintiff
Securities and Exchange Commission